UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LAVEAL DAVID JONES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-00648-SRC |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Respondent. | ) | |

**<u>Memorandum and Order</u>**

Laveal David Jones asks the Court to set aside, correct, or vacate his sentence under 28

U.S.C. § 2255.  He argues that his counsel was ineffective during plea negotiations in two

different ways.  First, he claims that counsel failed to challenge the lack of evidence supporting

his carjacking conviction.  And second, he claims that counsel failed to challenge his conviction

under 18 U.S.C. §§ 924(c) and 924(j) on double-jeopardy grounds.  Having carefully reviewed

the record, the Court holds that Jones has not shown entitlement to relief or an evidentiary

hearing under 28 U.S.C. § 2255.

## I.    Background

### A.    Factual background

On February 6, 2024, Jones pled guilty to (1) carjacking resulting in death, (2) discharge

of a firearm causing death in furtherance of a crime of violence, and (3) being a felon in

possession of a firearm.  Guilty Plea Agreement at 1, *United States v. Jones*, No. 4:22-cr-00594-

SRC-1 (E.D. Mo. Feb. 6, 2024), doc. 66 ("Crim. doc.").  The facts, as detailed in Jones's guilty

plea agreement, are as follows:

> Prior to October 2022, Defendant had been convicted of second-degree robbery in
> violation of Missouri Rev. Stat. § 569.030 in 2019 in 21st Judicial Circuit of

Missouri case number 17SLCR5877-01.  As a result of that conviction, Defendant had actually served a term of imprisonment exceeding one year.  Consequently, Defendant, throughout October 2022, knew that he was a convicted felon prohibited from possessing firearms.

At approximately 1:33 a.m. on October 1, 2022, Defendant, Victim D.J., and Witness A.S. traveled together to the Oz Night Club in Sauget, Illinois.  Security camera footage depicted the three individuals walking in with one another.  Furthermore, Victim D.J.'s cellular phone data and Defendant's cellular phone data corroborate their trip to Oz Night Club.

At approximately 4:10 a.m., Defendant, Victim D.J., and Witness A.S. left Oz Night Club.

The three traveled in Victim D.J.'s car, which was a 2015 Kia K900 sedan.  Based upon the VIN number, investigators determined that the vehicle was manufactured in South Korea.  Consequently, Victim D.J.'s Kia K900 had been transported in interstate commerce prior to October 1, 2022.

By approximately 4:21 a.m., Victim D.J.'s cellular phone was near the 4600 block of Labadie Avenue in St. Louis, Missouri.  There, Victim D.J., who was driving his 2015 Kia, let out Witness A.S.  Thereafter, only Defendant and Victim D.J. remained in the Kia.

After letting off Witness A.S., Victim D.J. and Defendant drove approximately 0.5 miles from where they let out Witness A.S. to park in the area of 3015 Walton Place in St. Louis, Missouri, which is within the Eastern District of Missouri.  At some time while Defendant is in Victim D.J.'s Kia, Defendant confronted Victim D.J. about money Defendant believed Victim D.J. owed.  That confrontation turned into a physical fight that caused blood from Defendant's bloody nose to stain Victim D.J.'s clothing.  Defendant then used a firearm belonging to Victim D.J. to fire the handgun twice.  Both shots struck Victim D.J., killing him.

After shooting Victim D.J., Defendant stripped Victim D.J. so that Defendant's blood could not be recovered from Victim D.J.'s clothing.  Defendant left Victim D.J.'s unclothed body on the ground outside of the car on Walton Place.  Defendant drove Victim D.J.'s 2015 Kia K900 sedan away, along with Victim D.J.'s clothing.

ShotSpotter, a system that detects the location of gun shots, recorded two gunshots fired at 4:26 a.m. within an approximate 82-foot radius from 3013 Walton Place, which encompassed the approximate location of where Victim D.J.'s body was later found in the street near 3015 Walton Place.  Victim D.J.'s cellular phone's historic location information revealed that, Victim D.J.'s cellular phone traveled from the area of the 4600 block of Labadie Avenue at approximately 4:21 a.m. to the area of 3015 Walton Place in St. Louis, Missouri, at approximately 4:24 a.m.

2

Surveillance video from the area captured a vehicle that stopped in the vicinity of where Victim D.J. was found, an interior light turned on inside the vehicle, and then the vehicle left the area. The headlights from another vehicle illuminated the same spot on the street and a body was seen laying on the street. Thereafter, police were contacted at 5:46 a.m. to respond to the report of the body lying naked in the street.

By approximately 4:31 a.m., after ShotSpotter detected the two gunshots, Victim D.J.'s cellular phone locations indicated that it began traveling south from 3015 Walton Place. The cellular phone appeared to stop for several minutes in a residential area north of Dr. Martin Luther King Drive.

After shooting Victim D.J., Defendant drove Victim D.J.'s Kia to a residence on St. Ferdinand Avenue in St. Louis, Missouri. There, Defendant gathered a change of clothes. While in that residence, Defendant requested that one of the occupants give him lighter fluid. That occupant complied and gave Defendant a plastic bottle of lighter fluid. After being at the St. Ferdinand residence for a few minutes, Defendant again left driving Victim D.J.'s Kia.

Shortly after 5:00 a.m. on October 1, 2022, Victim D.J.'s cellular phone location information indicated that the phone began to travel north and then east ultimately coming to rest around West Missouri Avenue and North B Street in East Saint Louis, Illinois. The City of St. Louis License Plate Reader System captured Victim D.J.'s Kia driving along a route consistent with the location information provided by Victim D.J.'s cellular phone.

Once Victim D.J.'s cellular phone reached the vicinity of West Missouri Avenue and North B Street in East Saint Louis, Illinois, Victim D.J.'s cellular phone remained in this area for several minutes and eventually lost signal at approximately 5:49 a.m.

When Defendant arrived in Victim D.J.'s Kia in the area of West Missouri Avenue and North B Street in East Saint Louis, Illinois, Defendant doused the Kia with the lighter fluid he took from the St. Ferdinand residence. Defendant ignited the Kia before walking back toward the road.

At approximately 6:00 a.m. on October 1, 2022, Defendant contacted an acquaintance in St. Louis to request a ride. That acquaintance traveled to the location provided by Defendant in East St. Louis, Illinois. Upon arrival, Defendant entered the acquaintance's vehicle wearing blood-stained clothing. The acquaintance drove Defendant back to St. Louis and parted company with Defendant later on October 1, 2022.

At approximately 5:51 a.m., the East Saint Louis Fire Department responded to a car fire on the north side of West Missouri Avenue approximately one hundred yards past North B Street, the same approximately location where Victim D.J.'s cellular device last connected to the cellular network. Despite the heavy fire

3

damage, investigators determined that the vehicle was Victim D.J.'s 2015 KIA K900.

While law enforcement investigated Victim D.J.'s death, Defendant Jones came to the attention of St. Louis Metropolitan Police Department (SLMPD) officers for an unrelated incident on October 17, 2022.

At approximately 2:00 a.m. on October 17, 2022, Defendant was the driver and sole occupant of a stolen, gray Kia traveling through St. Louis, Missouri, within the Eastern District of Missouri.  A patrol officer with the SLMPD observed Defendant violate several traffic signals.  After the officers followed Defendant, the officers saw Defendant wreck the car onto the west curb and then flee on foot towards the wooded area.

As officers searched for Defendant, the officers observed Defendant exit the wooded area.  After the officers were able to take Defendant into custody for fleeing a traffic accident, the officers canvased the area where Defendant was seen running. In the same area where Defendant ran, the officers located a black Smith & Wesson Shield, which is a firearm that was manufactured outside the State of Missouri.

Crim. doc. 66 at 3–7.  (The Court cites to page numbers as assigned by CM/ECF.).

### B.      Procedural background

#### 1.      Criminal proceedings

In October 2022, the FBI filed a criminal complaint against Jones and alleged that he had violated 18 U.S.C. § 2119 by committing a carjacking.  Crim. docs. 1–2.  Later that month, a federal grand jury charged Jones with one count of carjacking resulting in death, in violation of 18 U.S.C. § 2119; one count of discharge of a firearm causing death in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1) and 924(j); and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  Crim. doc. 20.  Sixteen months later, Jones pleaded guilty to all three counts.  Crim. docs. 65, 66.  He admitted to knowingly violating 18 U.S.C. § 2119, admitted there was a factual basis for his plea as to that count, and confirmed that he fully understood the elements of his crime—namely:

1.      That he took a motor vehicle from a person;

2.      That he did so by means of force and violence;

3.      That the motor vehicle had been transported in interstate commerce; and

4.      That at the time he took the motor vehicle, he intended to cause death.

Crim. doc. 66 at 2.

He also admitted to knowingly violating 18 U.S.C. §§ 924(c)(1) and 924(j), admitted that there was a factual basis for his plea as to that count, and confirmed that he fully understood the elements of his crime—namely:

1.      That he committed the crime of carjacking resulting in death as charged in Count One;

2.      That he knowingly discharged a firearm during and in relation to that crime; and

3.      That he used the firearm to cause the death of Victim D.J.

*Id.* Finally, Jones admitted to knowingly violating 18 U.S.C. § 922(g)(1), admitted that there was a factual basis for the plea, and confirmed that he fully understood the elements of his crime—namely:

1.      That he had been convicted of a crime punishable by imprisonment of more than one year;

2.      That, after being released from prison, he knowingly possessed a firearm;

3.      That, at the time he knowingly possessed the firearm, he knew he had been convicted of a crime punishable by imprisonment of more than one year; and

4.      That the firearm was transported across a state line at some point during or before his possession of it.

*Id.* at 3. Jones also agreed to waive many of his rights. For instance, he agreed to "waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the

5

constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s)." *Id.* at 12. Further, he agreed to "waive the right to appeal all sentencing issues, provided that the Court sentence[d] Defendant to the parties' joint recommendation of between 240 and 360 months' imprisonment." *Id.* Finally, Jones agreed to "waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel." *Id.*

The United States Probation Officer prepared a Presentence Investigation Report (PSR). Crim. doc. 78. The PSR calculated Jones's total offense level as 40 and his criminal history category as II. *Id.* at ¶¶ 50, 57. Based upon that total offense level and criminal history category, the imprisonment range that the federal guidelines provided was 324 months to 405 months. *See id.* at ¶ 80.

In February 2024, the district court (the Honorable Ronnie L. White, then a judge of the United States District Court for the Eastern District of Missouri, now retired) held a plea hearing at which Jones pleaded guilty to all three counts. Crim. docs. 65–66; crim. doc. 90, Plea Hr'g Tr. at 23:14–23:17. Jones confirmed that he understood the elements of his crimes:

> **THE COURT:** As to Count One, the elements of the crime are: First, Defendant took a motor vehicle from a person; Second, the Defendant did so by means of force and violence; Third, the motor vehicle had been transported in interstate commerce; and, Fourth, at the time Defendant took the motor vehicle, he intended to cause death.
>
> Count Two. The elements of the crime are: First, Defendant committed the crime of Carjacking Resulting in Death, as charged in Count One; Second, Defendant knowingly discharged a firearm in relation to that crime; and, Third, Defendant used the firearm to cause the death of victim D.J.

6

> As to Count Three, the elements of the crime are: First, Defendant had been convicted of a crime punishable by imprisonment of more than one year; Second, after that, the Defendant knowingly possessed a firearm; Third, at the time the Defendant knowingly possessed a firearm, he knew he had been convicted of a crime punishable by imprisonment of more than one year; and, Fourth, the firearm was transported across a state line at some point during or before the Defendant's possession of it.
>
> Do you understand the elements of the charges against you?
>
> **[JONES]:**    Yes, sir.

Crim. doc. 90, Plea Hr'g Tr. at 9:22–10:19.

Jones also confirmed that he committed the actions that the United States laid out in the guilty plea agreement and during the plea hearing:

> **THE COURT:**    Mr. Jones, did you go over those facts carefully with your lawyers?
>
> **[JONES]:**    Yes, sir.
>
> **THE COURT:**    Is there any disagreement about them?
>
> **[JONES]:**    No, sir.
>
> **THE COURT:**    Did you do those things that were just stated for the record by Mr. Finlen?
>
> **[JONES]:**    Yes, sir.

*Id.* at 15:23–16:5.

Finally, Jones affirmed that he was satisfied with the representation of his attorneys, Julie Clark and Stephanie Zipfel:

> **THE COURT:**    You're here this afternoon with your attorneys, Ms. Clark and Ms. Zipfel. Have you had enough time to discuss your case with them?
>
> **[JONES]:**    Yes, sir.

7

| THE COURT: | Are you satisfied with their representation of you in this case? |
|---|---|
| [JONES]: | Yes, sir. |
| THE COURT: | Is there anything you felt your attorneys should have done but did not do in representing you? |
| [JONES]: | No, sir. |

*Id.* at 5:16–5:25.

Three months later, in May 2024, Judge White sentenced Jones to a within-the-guidelines-range sentence of 360 months on Counts One and Two, and 180 months on Count Three, with all counts to run concurrently.  Crim. doc. 84 at 2.  Jones is currently serving his sentence at USP Beaumont in Texas with a projected release date of October 31, 2048.  *See* Find an inmate, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 30, 2026).

### 2.    Civil proceedings

In May 2025, Jones timely filed a motion to vacate his sentence pursuant to section 2255. *See Jones v. United States*, No. 4:25-cv-00648-SRC (E.D. Mo. May 6, 2025), doc. 1 ("Civ. doc.").  He makes two arguments:  (1) that his counsel was ineffective by failing to challenge the lack of evidence supporting his carjacking conviction, and (2) that his counsel was ineffective by failing to challenge his conviction under sections 924(c)(1) and 924(j) as double jeopardy.  Civ. doc. 1 at 4–5.  The United States timely filed its response, civ. doc. 3, and Jones failed to file a reply brief by his original deadline of August 25, 2025, *see* civ. doc. 2.  The Court then granted Jones an extension of time to file his reply by September 24, 2025.  *See* civ. docs. 4, 6.  To date, however, Jones has not filed his reply in this case.  Jones's motion, civ. doc. 1, is therefore ripe for the Court's review.

## II.       Standard

### A.       Section 2255

Under section 2255, a federal prisoner "may move the court which imposed [his] sentence to vacate, set aside or correct the sentence" on the grounds that the court imposed "the sentence . . . in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).  If a petitioner claims his sentence violates the Constitution or laws of the United States, the petitioner must establish that the violation constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003) (first quoting *United States v. Boone*, 869 F.2d 1089, 1091 n.4 (8th Cir. 1989); and then citing Fed. R. Crim. P. 32(d) advisory committee notes to the 1983 amendments).  Generally, to obtain section 2255 relief based on a claim, a petitioner must have raised the underlying error on direct appeal.  *See Roundtree v. United States*, 885 F.3d 1095, 1097 (8th Cir. 2018).  If a petitioner failed to do so, the Court considers the claim procedurally defaulted, rendering it ineffective in establishing a right to section 2255 relief.  *See id.*

Three exceptions to this general rule exist.  First, "if the error is jurisdictional, the error may be raised on collateral review without being subjected to procedural default analysis." *United States v. Mooring*, 287 F.3d 725, 727 (8th Cir. 2002).  Second, if a petitioner raises a constitutional claim, the Court does not consider the claim procedurally defaulted if the petitioner shows cause for the default and actual prejudice.  *See Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994); *Reid v. United States*, 976 F.2d 446, 448 (8th Cir. 1992).  This "cause and prejudice exception does not apply to nonconstitutional or nonjurisdictional claims

9

that could have been but were not raised on direct appeal." *Anderson*, 25 F.3d at 706 (first citing *Brennan v. United States*, 867 F.2d 111, 120 (2d Cir. 1989); and then citing *Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir. 1988)).  Finally, the Court "will consider a claimed error that could have been raised at trial or on direct appeal if the alleged error was a fundamental miscarriage of justice."  *Id.* (citing *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (per curiam)).  This exception, however, "applies only when a petitioner shows by clear and convincing evidence that, but for an alleged constitutional error, no reasonable juror would have found the petitioner guilty," *id.* at 706–07 (citing *Wallace v. Lockhart*, 12 F.3d 823, 827 (8th Cir. 1994)), and extends only to claims of factual innocence, *id.* at 707 (first citing *Narcisse v. Dahm*, 9 F.3d 38, 40 (8th Cir. 1993); and then citing *Ramey*, 8 F.3d at 1314).

If the petitioner's claims are not procedurally barred, the Court must hold an evidentiary hearing to consider the claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *see also Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994).  A petitioner is entitled to an evidentiary hearing "when the facts alleged, if true, would entitle [the petitioner] to relief."  *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996) (quoting *Wade v. Armontrout*, 798 F.2d 304, 306 (8th Cir. 1986)).  However, a court may dismiss a claim without a hearing "if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based."  *Shaw*, 24 F.3d at 1043 (citing *Larson v. United States*, 905 F.2d 218, 220–21 (8th Cir. 1990)).

### B.    Ineffective assistance of counsel

A petitioner may raise an ineffective-assistance-of-counsel claim for the first time in a section 2255 motion, even if he could have raised the same claim on direct appeal.  *Massaro v. United States*, 538 U.S. 500, 504 (2003).  To establish ineffective assistance of counsel, a

10

petitioner "faces a heavy burden." *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000) (quoting *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)).  He must show both that his counsel's performance was deficient and that the deficient performance prejudiced his case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Sera*, 267 F.3d 872, 874 (8th Cir. 2001).  An attorney's performance is deficient only if it falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88; *see also Sera*, 267 F.3d at 874. Two substantial impediments exist to making such a showing.  First, "a 'strong presumption'" exists "that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 689). Second, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* (quoting *Strickland*, 466 U.S. at 690).

To satisfy *Strickland*'s prejudice element in the context of plea negotiations, the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Covington v. United States*, 739 F.3d 1087, 1090 (8th Cir. 2014) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). But importantly, "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Thompson v. United States*, 872 F.3d 560, 567 (8th Cir. 2017) (quoting *Lee v. United States*, 582 U.S. 357, 369 (2017)).  Instead, courts should "look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* (quoting *Lee*, 582 U.S. at 369).

## III.    Discussion

As part of Jones's guilty plea agreement, he "agree[d] to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to . . . Section

2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel." Crim. doc. 66 at 12. Jones raises two ineffective-assistance-of-counsel claims.

### A.    Failing to challenge the lack of evidence supporting the carjacking conviction

Jones argues that his counsel was deficient because she "failed to challenge the [evidence]"—or rather, the lack thereof—supporting his carjacking conviction. Civ. doc. 1 at 4. According to Jones, his attorney "erroneously advised [him] to enter a guilty plea," because "the nature of the crime [he] committed was not a carjacking," and there was "no [evidence] in . . . discovery that support[ed] a carjacking." *Id.* At most, Jones posits, "[t]he [evidence] in the discovery only supports that the [vehicle] was used as a getaway car." *Id.*

Although styled as an ineffective-assistance claim, the Court notes that Jones's argument also sounds in actual innocence, as he argues that he did not commit a carjacking. *See id.* The Court therefore considers both the actual-innocence and ineffective-assistance aspects of Jones's first claim.

#### 1.    Actual innocence

To establish actual innocence, a petitioner must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (citation modified). In this regard, "'actual innocence' means factual innocence, not mere legal insufficiency." *Id.*

The Court finds that, to the extent Jones argues that he is actually innocent of the carjacking offense, his argument fails. The federal carjacking statute, 18 U.S.C. § 2119, proscribes the taking of a motor vehicle "that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation." The statute therefore requires the United States to prove that "(1) the defendant took or attempted to take a motor vehicle from the person or presence of another by force and

12

violence or by intimidation; (2) the defendant acted with the intent to cause death or serious bodily harm; and (3) the motor vehicle involved has been transported, shipped, or received in interstate or foreign commerce." *United States v. Wright*, 246 F.3d 1123, 1126 (8th Cir. 2001) (citing *United States v. Williams*, 136 F.3d 547, 550 (8th Cir. 1998)).  And, when "death results" from the carjacking, the United States must prove this additional element.  *See* 18 U.S.C. § 2119(3) ; *cf. United States v. Long Pumpkin*, 56 F.4th 604, 610 (8th Cir. 2022) (noting that, when defendants were charged with carjacking under section 2119(2), "the government was . . . required to prove an additional element that 'serious bodily injury' resulted from the carjacking").

At his change-of-plea hearing, Jones agreed under oath that he understood the elements of the crime of carjacking.  *See* crim. doc. 90, Plea Hr'g Tr. at 9:22–10:19.  He also agreed under oath to the facts as laid out in the plea agreement—namely, that (1) he shot victim D.J. while in D.J.'s vehicle; (2) after shooting D.J., Jones drove D.J.'s vehicle away; (3) D.J.'s car had previously been transported in interstate commerce; and (4) D.J. died from the gunshot wounds. Crim. doc. 66 at 3–7; crim. doc. 90, Plea Hr'g Tr. at 11:7–16:5.

Jones's argument that he merely used D.J.'s vehicle as a getaway car fails.  The Eighth Circuit has upheld carjacking convictions where a jury could reasonably find that the use of force preceded the defendant's complete taking of the vehicle.  *See Wright*, 246 F.3d at 1126–27; *Long Pumpkin*, 56 F.4th at 610–12; *United States v. Clark*, 115 F.4th 895, 898–900 (8th Cir. 2024); *United States v. Myore*, 142 F.4th 606, 611–12 (8th Cir. 2025).  Here, Jones agreed that he used physical force and violence on D.J. before driving away with D.J.'s vehicle.  *See* crim. doc. 66 at 4–5; crim. doc. 90, Plea Hr'g Tr. at 12:12–12:17, 13:15–13:17.  Jones therefore cannot show that, "in light of all the evidence, it is more likely than not that no reasonable juror would have

13

convicted him." *Bousley*, 523 U.S. at 623 (citation modified). Thus, his actual innocence claim fails.

### 2. Ineffective assistance

The Court turns now to the ineffective-assistance aspect of Jones's claim. To establish ineffective assistance in the context of a guilty plea, Jones must first show that his counsel's performance was deficient—i.e., that it "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. Then, Jones must show that counsel's deficient performance prejudiced him—i.e., that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Covington*, 739 F.3d at 1090 (quoting *Hill*, 474 U.S. at 59).

Turning first to the deficient-performance prong, the record belies Jones's claim that he was dissatisfied with his counsel in any way. At Jones's change-of-plea hearing, the Court asked Jones if he was satisfied with counsel's representation, to which Jones responded, "Yes, sir." Crim. doc. 90, Plea Hr'g Tr. at 5:20–5:22. The Court further asked, "[i]s there anything you felt your attorneys should have done but did not do in representing you?" *Id.* at 5:23–5:24. "No, sir," Jones replied. *Id.* at 5:25.

In any event, the Court finds that Jones's counsel did not fall below an objective standard of reasonableness. As previously explained, Jones's admitted conduct satisfies the elements of the federal carjacking statute. That Jones's counsel did not object to the lack of evidence supporting a carjacking conviction was therefore not deficient performance, as this argument would have been meritless. *See Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994) (per curiam) (stating that "counsel's failure to advance a meritless argument cannot constitute ineffective assistance").

14

And, even if Jones's counsel did fall below an objective standard of reasonableness in not objecting to the evidence, Jones does not satisfy the prejudice prong. In his motion, he merely argues that his attorney "erroneously advised [him] to enter a guilty plea." Civ. doc. 1 at 4. But nowhere does Jones argue that, but for counsel's deficiency, he would have insisted on going to trial. *See Covington*, 739 F.3d at 1090. Thus, Jones's first ineffective-assistance claim fails.

### B.   Failing to challenge the conviction under section 924(c)(1) and 924(j) as double jeopardy

Second, Jones argues that his counsel "failed to challenge [his] 924(c)(1) conviction and [his] 924(j) conviction as double jeopardy." Civ. doc. 1 at 5. This argument fails.

The Double Jeopardy Clause of the Fifth Amendment provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. As relevant here, the Double Jeopardy Clause "protects against multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (citation omitted); *see also United States v. Carrillo*, 982 F.3d 1134, 1135–36 (8th Cir. 2020).

Jones appears to argue that he received separate convictions (and therefore separate punishments) under section 924(c) and section 924(j). *See* civ. doc. 1 at 5. But the record demonstrates otherwise. The United States charged Jones with a single count (Count Two) referencing both section 924(c) and 924(j). *See* crim. doc. 20 at 1–2. The citation to both provisions within Count Two makes sense, as "subsection (j) references subsection (c) . . . with respect to offense elements." *Lora v. United States*, 599 U.S. 453, 458 (2023) (emphasis removed); *see also* 18 U.S.C. § 924(j) (explaining penalties for one who "causes the death of a person through the use of a firearm" "*in the course of a violation of subsection (c)*" (emphasis added)). When Jones pleaded guilty to Count Two, *see* crim. doc. 66 at 2; crim. doc. 90, Plea Hr'g Tr. at 23:14–23:23, he received only one conviction for the violations of section 924(c) and

15

924(j), *see* crim. doc. 84 at 1.  He also received a singular sentence for this offense, as the Court imposed a 360-month sentence for Counts One and Two combined.  *See* crim. doc. 84 at 2 (imposing "a term of 360 months on count one and two  . . . all counts to run concurrently"); crim. doc. 92, Sent'g Hr'g Tr. at 16:19–16:25 (same).

That the Court set Jones's 360-month sentence for Counts One and Two to run concurrently with his 180-month sentence for Count Three, *see* crim. doc. 84 at 2, further undermines his double-jeopardy argument.  A sentence imposed under section 924(c) cannot run concurrently with another sentence.  *See* 18 U.S.C. § 924(c)(1)(D)(ii) ("[N]o term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person . . . .").  But a sentence imposed under section 924(j) can.  *See Lora*, 599 U.S. at 455 (holding that section 924(c)'s consecutive-sentence mandate does not apply to section 924(j), so "[a] sentence for a § 924(j) conviction therefore can run either concurrently with or consecutively to another sentence").  So, the Court's imposing a concurrent sentence means that the Court sentenced Jones only under section 924(j) for Count Two.  And "a defendant who is sentenced under subsection (j) does not receive 'a term of imprisonment imposed . . . under [subsection (c)]." *Lora*, 599 U.S. at 459.  Thus, Jones's case does not implicate one of the double-jeopardy concerns raised in *Barrett v. United States*, 607 U.S. 128, 149 (2026) (holding that a defendant may not receive separate convictions under section 924(c)(1)(A)(i) and section 924(j) for a single act that violates both provisions).

Finally, Jones does not challenge his section 924(j) conviction and his predicate carjacking conviction under section 2119 on double-jeopardy grounds.  His case therefore does not implicate a second double-jeopardy concern alluded to in *Barrett*.  *See* 607 U.S. at 142–43 (noting that, while a conviction under section 924(c)(1) "adds to the predicate conviction,"

16

"[n]owhere does the statute prescribe the same in relation to a subsection (j) conviction"). Instead, Jones challenges what he perceives to be separate convictions under section 924(c) and 924(j). *See* civ. doc. 1 at 5 ("My attorney failed to challenge my 924(c)(1) conviction and my 924(j) conviction as double jeopardy."). And, as explained above, this argument fails.

Accordingly, Jones's counsel did not fall below an objective standard of reasonableness in failing to challenge Count Two on double-jeopardy grounds, as this argument would have been meritless. *See Rodriguez*, 17 F.3d at 226. And even if Jones's counsel were deficient under *Strickland*, Jones does not satisfy the prejudice prong, because he again does not argue that, absent counsel's alleged error, he would have insisted on going to trial. *See Covington*, 739 F.3d at 1090. Thus, Jones's second ineffective-assistance claim fails.

## IV.     Supplemental motion

The Court also notes that Jones filed a document titled "Motion For Leave to Supplement Claim(s) and Ground(s) In Light of U.S. - Supreme Court Decision(s) Pursuant to 28 U.S.C. § 2255 Motion Title to Vacate." Civ. doc. 7. In this motion, Jones seeks leave to add an additional claim of prosecutorial misconduct to his motion to vacate. *See id.* at 1, 7. Because Jones filed this new motion while his original section 2255 motion was pending, the Court construes this new motion as a motion for leave to amend. *See United States v. Sellner*, 773 F.3d 927, 931–32 (8th Cir. 2014). The United States filed a motion to strike Jones's motion to amend (or, in the alternative, a response in opposition to the motion). *See* civ. doc. 8.

17

### A.      Timeliness

Under 28 U.S.C. § 2255(f), a petitioner must file a motion to vacate within one year of the latest of the following:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

The Court sentenced Jones on May 7, 2024.  Crim. docs. 83–84.  Jones did not appeal, so his conviction became final on May 21, 2024.  *See Anjulo-Lopez v. United States*, 541 F.3d 814, 816 n.2 (8th Cir. 2008) (citing *Never Misses A Shot v. United States*, 413 F.3d 781, 782 (8th Cir. 2005)); Fed. R. App. P. 4(b)(1)(A)(i) (noting that a criminal defendant has fourteen days from the entry of judgment to file a notice of appeal).  Jones timely filed his original section 2255 motion on May 6, 2025.  *See* civ. doc. 1; 28 U.S.C. § 2255(f)(1).  But Jones filed his motion to amend nearly a year later, on May 5, 2026, *see* civ. doc. 7, so he fails to comply with section 2255(f)(1).  Jones also does not assert that his motion is timely under any other provision of section 2255(f).  *See* civ. doc. 7 at 6 (arguing for timeliness only under section 2255(f)(1)).  The Court therefore finds that Jones's supplemental motion is untimely.  *See Taylor v. United States*, 792 F.3d 865, 869 (8th Cir. 2015) (finding an amendment to a section 2255 motion untimely when filed after the one-year period).

18

**B.      Relation back**

"Claims made in an untimely filed motion under § 2255 may be deemed timely if they relate back to a timely filed motion as allowed by Federal Rule of Civil Procedure 15(c)." *Taylor*, 792 F.3d at 869 (quoting *Dodd v. United States*, 614 F.3d 512, 515 (8th Cir.2010)).  "An amendment to a pleading relates back to the original pleading when 'the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading.'"  *Id.* (quoting Fed. R. Civ. P. 15(c)(1)(B)).  "To arise out of the same conduct, transaction, or occurrence, the claims must be tied to a common core of operative facts."  *Id.* (citation modified).  "New claims must arise out of the same set of facts as the original claims, and the facts alleged must be specific enough to put the opposing party on notice of the factual basis for the claim."  *Id.* (citation modified).

In his original section 2255 motion, Jones raises two ineffective-assistance-of-counsel claims.  *See* civ. doc. 1 at 4–5.  But in his motion to amend, Jones raises a claim of prosecutorial misconduct.  *See* civ. doc. 7 at 1, 7, 12.  This claim asserts "a new ground for relief supported by facts that differ in both time and type" from those in the original motion to vacate.  *Mayle v. Felix*, 545 U.S. 644, 650 (2005).  Indeed, the *prosecutor's* alleged misconduct—i.e., "avoid[ing] required disclosure" and "persuad[ing] the jury to wrongly convict [Jones] or assess an unjustified punishment [against him]," civ. doc. 7 at 7—involves conduct different from *counsel's* alleged failure to challenge Jones's convictions on evidentiary and double-jeopardy grounds, civ.doc. 1 at 4–5.  *See* Fed. R. Civ. P. 15(c).  Jones's motion to amend therefore does not relate back to his original motion, as the facts he alleges in his original motion are not

19

"specific enough to put the [United States] on notice of the factual basis for the [prosecutorial-misconduct] claim." *Dodd*, 614 F.3d at 515.

### C.      Equitable tolling

The Court must also consider whether equitable tolling applies to Jones's motion to amend. *See United States v. Hernandez*, 436 F.3d 851, 858 (8th Cir. 2006). Equitable tolling applies "(1) if there are 'extraordinary circumstances' beyond a movant's control that would keep him from filing in a timely fashion," or "(2) if the government's conduct 'lulled' the movant into inaction through reliance on that conduct." *Id.* (citation omitted). Importantly, the circumstances causing the movant's delay in filing must be "external to [him] and not attributable to his actions." *Id.*

Jones states in his motion that he "recently discovered that he was never informed to the burden(s) [sic] of the charged offenses against him that the [scienter element] must be proven beyond a reasonable doubt." Civ. doc. 7 at 2. But "a pro se litigant's misunderstanding of the relevant law . . . does not justify equitable tolling." *United States v. Mendez*, 860 F.3d 1147, 1151 (8th Cir. 2017) (citing *Shoemate v. Norris*, 390 F.3d 595, 598 (8th Cir. 2004)). And Jones makes no other arguments showing "extraordinary circumstances" or government action that kept him from filing his motion to amend within the limitations period. The Court thus finds that Jones does not merit equitable tolling.

Having found that Jones's motion to amend is untimely and does not relate back to his original motion, the Court denies Jones leave to amend his motion to vacate. Civ. doc. 7. The Court also denies as moot the United States' motion to strike. Civ. doc. 8.

20

## V.     Certificate of appealability

For the Court to issue a certificate of appealability, Jones must make a substantial showing that he suffered the denial of a constitutional right. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). A substantial showing means one indicating that reasonable jurists could debate the issues, a court could resolve the issues differently, or the issues deserve further proceedings. *Id.* But as shown in the discussion above, Jones has not made such a showing. Accordingly, the Court declines to issue a certificate of appealability in this case.

## VI.    Conclusion

The Court finds that the record conclusively establishes that section 2255 does not entitle Jones to relief or an evidentiary hearing. Accordingly, the Court denies Jones's [1] Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. The Court also denies as untimely Jones's [7] motion for leave to amend and denies as moot the United States' [8] motion to strike. A separate judgment accompanies this Memorandum and Order.

So ordered this 30th day of July 2026.

_____

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE

21